IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| FRANK G. TREADWAY, <br> JOEY CLARK HATFIELD, <br> and CHARLES W. HENSLEY, <br> individually and on behalf of all others <br> similarly situated, <br> <br> **Plaintiffs,** <br> <br> v. <br> <br> BLUESTONE COAL CORP., <br> BLUESTONE INDUSTRIES, INC., <br> and MECHEL BLUESTONE, INC., <br> <br> **Defendants.** | CASE NO. 5:16-cv-12149 |

## COMPLAINT

The Plaintiffs, Frank G. Treadway, Joey Clark Hatfield, and Charles W. Hensley, by and through the undersigned counsel, bring this action arising out of a violation of the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. Section 2101 *et seq*.

Defendant, Mechel Bluestone, Inc., in conjunction with its affiliates Bluestone Coal Corporation and Bluestone Industries, Inc., failed to provide their full-time employees with the sixty-days notice required under the WARN Act prior to laying off more than fifty of those workers beginning in December 2011 at the large mining operation known as the Burke Mountain Strip Mine near the southern border of Wyoming County, West Virginia.

Plaintiffs bring this action, consistent with Federal Rule of Civil Procedure 23, on their own behalf and on behalf of the Defendants' other similarly-situated employees, for statutory damages, interest, costs, and fees, pursuant to the WARN Act.

1

**Parties**

1. Plaintiff, Mr. Frank G. Treadway, was a full-time employee of Mechel Bluestone, Inc. and Bluestone Coal Corporation for two and a half years. Mr. Treadway worked on the day shift for those Defendants at the expansive surface mining site known as the "Burke Mountain Strip Mine," near the southern border of Wyoming County, West Virginia, at the time that he was laid off without prior written notice on or about March 2, 2012. At all times relevant herein, Mr. Treadway has resided in Fairdale, Raleigh County, West Virginia.

2. Plaintiff, Mr. Joey Clark Hatfield, was a full-time employee of Mechel Bluestone, Inc. and Bluestone Coal Corporation for five years. Mr. Hatfield worked on the midnight shift for those Defendants at the Burke Mountain Strip Mine when he was laid off without prior written notice on or about March 2, 2012. At all times relevant herein, Mr. Hatfield has resided in the area near Hanover, Wyoming County, West Virginia.

3. Plaintiff, Mr. Charles W. Hensley, was a full-time employee of Mechel Bluestone, Inc. and Bluestone Coal Corporation for two and a half years. Mr. Hensley worked on the midnight shift for those Defendants at the Burke Mountain Strip Mine when he was laid off without prior written notice on or about December 28, 2011. At all times relevant herein, Mr. Hensley has resided in Lester, Raleigh County, West Virginia.

4. Bluestone Coal Corporation (hereinafter "Bluestone Coal") is a West Virginia Corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

5. Bluestone Industries, Inc. (hereinafter "Bluestone Industries") is a West Virginia Corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia

25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

6. Mechel Bluestone, Inc., (hereinafter "Mechel Bluestone") is a Delaware corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

## Facts

7. Prior to December 27, 2011, Bluestone Coal, both on its own and jointly with Mechel Bluestone and Bluestone Industries, employed at least approximately 105 employees, including Plaintiffs, excluding part-time employees at the Burke Mountain Strip Mine.

8. During the years 2011 and 2012, the Defendants owned, operated, and controlled several mining facilities that produced and prepared coal in Wyoming and McDowell Counties, West Virginia, including the integrated operations encompassed by the Burke Mountain Strip Mine.

9. Mechel Bluestone owned, controlled, operated, and maintained the Burke Mountain Strip Mine, in coordination with Bluestone Industries, through the subsidiary Bluestone Coal Corporation.

10. The Burke Mountain Strip Mine is located on the ridge known as Burke Mountain that generally runs for several miles in a southerly direction originating from the headwaters of the areas known as Pinnacle Creek and White Oak Creek in Wyoming County.

11. The Burke Mountain Strip Mine constituted a "single site of employment" for purposes of the WARN Act.

12. Several workers, including Mr. Hatfield, maintained detailed daily journals regarding the part of the Burke Mountain Strip Mine at which they worked each day, the equipment that they

operated, and the length of their shifts.

13. All of the employees at the Burke Mountain Strip Mine were engaged in a common operational purpose, under common management, used common equipment, and were under the Defendants' *de facto* and *de jure* management, maintenance, and control. Representatives of each of the three Defendants routinely ordered, directed, and/or controlled the Plaintiffs and other workers throughout the Burke Mountain Strip Mine on a daily basis.

14. At all times relevant to this action, the Defendants' mining facilities in Wyoming and McDowell Counties were under the Defendants' *de jure* and *de facto* ownership and control as an employer and a mine operator.

15. Upon information and belief, employees of Defendant Bluestone Industries directed the workforce at the Burke Mountain Strip Mine and participated in implementing the layoff that forms the basis of the instant action.

16. Up until December 28, 2011, there were three shifts of workers at the Burke Mountain Strip Mine—day or first shift from 7:00 a.m. till 3:00 p.m.; evening or second shift from 3:00 p.m. till 11:00 p.m.; and hootowl, midnight, or third shift from 11:00 p.m. until 7:00 a.m.

**Defendants ordered and carried out a mass layoff at the Burke Mountain Strip Mine**

17. Around the end of the day shift on December 28, 2011, the Defendants' management verbally informed all of their employees at the Burke Mountain Strip Mine—some of them in person, and some of them by telephone—that they were laid off for an indefinite period. At that time, the management told the workers to show up for a meeting at the office known as the Blue Building on Burke Mountain on or about the upcoming Friday, December 30, 2011, in order to pick up their paychecks.

18. One week later, on or about January 3, 2012, Defendants called approximately 40

4

miners back to work at the Burke Mountain Strip Mine. The other roughly 65 of the Defendants' employees continued to be laid off permanently.

19. For approximately 35 of Defendants' employees on the day shift and/or midnight shifts, December 28, 2011 was their last day of employment at the Burke Mountain Strip Mine. On that day, Mr. Hensley left his job at the mine around 7:00 a.m. for the last time.

20. For approximately 30 of Defendants' employees on the second shift, December 27, 2011 had been their last day of employment at the Burke Mountain Strip Mine because they learned of the layoff before their shift began on December 28, 2011.

21. On or about February 11, 2012, Mr. Hatfield was verbally told by Defendants that approximately 5 more of Defendants' employees at the Burke Mountain Strip Mine were laid off.

22. Mr. Hatfield was informed by management that he had been scheduled for layoff on February 11. However, another miner offered to swap places with Mr. Hatfield because the other miner had already found another job. Thus, Mr. Hatfield was able to continue working at Burke Mountain for a bit longer.

23. On or about March 2, 2012, approximately 30 of Defendants' employees at the Burke Mountain Strip Mine were laid off, including Mr. Hatfield.

24. The layoffs on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown, each entailed less than the minimum number of employees specified in 29 U.S.C. Sec. 2101(a)(2) or (3) as necessary to constitute a plant closing or mass layoff. Nonetheless, in the aggregate, the number of employees laid off on those dates exceeded that minimum number. Those aforementioned layoff dates all occurred within a period that was equal to or less than 90 days from one another.

25. Neither the Plaintiffs, nor a representative of their collective bargaining unit of the

United Mine Workers of America, received written notice that the employees would be laid off prior to the occurrence of these layoffs in 2011 and 2012.

26. Upon information and belief, the employees laid off by Defendants were not all provided with the graduated days and the holiday pay due to them.

27. Dental and life insurance for the employees laid off by Defendants on the aforementioned dates were terminated less than 60 days following those layoffs.

28. Plaintiffs and all of those subject to the 2011-2012 layoffs at the Burke Mountain Strip Mine were not called back to work for a period lasting over six months.

### Count I - Violation of the WARN Act
29 U.S.C. 2104

29. Plaintiffs repeat and re-allege paragraphs 1 through 28 as though fully set forth herein.

30. Defendant Bluestone Coal individually, and all Defendants jointly, constitute employers as defined by 29 U.S.C. § 2101(a)(1), for purposes of the WARN Act, because Bluestone Coal individually and all Defendants jointly are business enterprises that either employed one hundred (100) employees, excluding part-time employees, or employed one hundred or more employees who in the aggregate worked at least 4,000 hours per week (exclusive of hours of overtime).

31. The Plaintiffs are affected employees as defined by 29 U.S.C. § 2101(a)(5), for purposes of the WARN Act, because they are employees who experienced an employment loss as a consequence of a plant closing or mass layoffs ordered by Defendants as stated in 2011-2012.

32. As employers under the WARN Act, Defendants had an obligation pursuant to 29 U.S.C. § 2102 to provide written notice to the affected employees or to a representative of the affected employees at the Burke Mountain Strip Mine at least sixty (60) days prior to the planned plant closing or mass layoffs.

33. Plaintiffs were laid off by Bluestone Coal, and by Defendants jointly, on December 27-28, 2011, and March 2, 2012, as part of four or more groups of employees at the Burke Mountain Strip Mine—a single site of employment—who were laid off on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown, all falling within a 90-day period encompassing the aforementioned dates.

34. Less than the minimum number of employees specified in 29 U.S.C. Section 2102(a)(2) and (3) were included in the layoffs on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown within a 90-day period encompassing those aforementioned dates. However, in the aggregate, the number of Defendants' employees laid off in those layoffs exceeds that minimum number. Accordingly, those layoffs taken together constitute a plant closing and/or mass layoff pursuant to 29 U.S.C. 2104(d).

35. Plaintiff Hatfield and Defendants' other aggrieved and affected employees experienced an employment loss because they were separated from work, without cause, for a period exceeding 6 months, as a result of the layoffs on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown within a 90-day period encompassing all those dates, which constituted a plant closing at the Burke Mountain Strip Mine.

36. Alternatively, the Plaintiffs and Defendants' other aggrieved and affected employees at the Burke Mountain Strip Mine experienced an employment loss as a result of the layoff that was executed on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown within a 90-day period encompassing those dates, and as a consequence of which the Plaintiffs and Defendants' other affected employees were laid off for a period exceeding 6 months, and which constituted a mass layoff.

37. Defendants failed to provide a written notice to Plaintiffs, or their union

representatives, or to Defendants' other affected employees at the Burke Mountain Strip Mine, prior to closing the plant or carrying out the mass layoff beginning on December 27-28, 2011.

38. As a result of the plant closing or mass layoff carried out on December 27-28, 2011, February 11, 2012, and March 2, 2012, among other dates known and unknown within a 90-day period encompassing all those dates, at least approximately 100 of Defendants' employees, excluding part-time employees, and including Plaintiffs, who collectively comprised more than thirty-three percent (33%) of the employees at the Burke Mountain Strip Mine, experienced an involuntary, continuous, and ongoing employment loss for a period well in excess of six (6) months, which continues to cause them substantial economic and other harm.

## Class Allegations

39. Plaintiffs repeat and re-allege paragraphs 1 through 38 as though fully set forth herein.

40. Pursuant to Rule 23(a)-(b), Plaintiffs bring this class action on behalf of the other similarly situated employees (hereinafter "Class Members") who were laid off, as set forth above, at the Burke Mountain Strip Mine.

**41. The proposed class would be defined as: All full-time employees who were subject to a reduction in force from full-time employment at the Burke Mountain Strip Mine by the Bluestone Coal Corporation, Bluestone Industries, Inc., or Mechel Bluestone, Inc. from December 27, 2011 through March 26, 2012.**

42. The Class Members are so numerous that joinder of all Class Members is impracticable because it is estimated that Defendants laid off at least approximately 100 of their employees in violation of the WARN Act.

43. There are questions of law or fact common to the Class Members that predominate over any questions affecting only individual Class Members. The principal question in this case is

whether the Defendants' failure to provide notice of the 2011-2012 Burke Mountain mass layoffs constituted a violation of the WARN Act.

44. The claims and defenses of the Plaintiffs are typical of the claims or defenses of the Class Members as a whole because the Class Members are similarly affected by Defendants' wrongful conduct in violation of the WARN Act.

45. The Plaintiffs will fairly and adequately protect the interest of the Class Members because Plaintiffs have demonstrated their commitment to this claim by carefully documenting their work history in detail and by preserving their pay stubs, and because Plaintiffs are represented by counsel who are competent and experienced, including experienced in bringing class action litigation under the federal WARN Act involving Mechel Bluestone and its subsidiaries.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because (a) joinder of all Class Members is impracticable, (b) the Class Members are likely unemployed and not in a position to retain counsel, and (c) each individual Class Member has suffered damages that are merely modest. Therefore, there will be no difficulty in the management of this class action and concentration of the claims in this forum will promote judicial economy.

## Damages and Relief Requested

47. Pursuant to Rule 23(a), (b), & (c), and 29 U.S.C. § 2104(a)(5), and other applicable law, Plaintiffs request that the Court certify that Plaintiffs and all other similarly-situated workers from Defendants' plant closing or mass layoff, as set forth above, constitute a single class.

48. Plaintiffs request that the Court designate them as class representatives as permitted by 29 U.S.C. § 2104(a)(5).

49. Plaintiffs request that the Court appoint the undersigned attorneys as class counsel.

50. As a result of Defendants' WARN Act violations, Plaintiffs request that the Court order Defendants to pay Plaintiffs and all other Class Members up to the maximum amount of statutory damages, including interest compounded at an appropriate rate and frequency, pursuant to 29 U.S.C. Sections 2104(a)(1) & (2).

51. Plaintiffs request that the Court order Defendants to pay Plaintiffs' reasonable attorneys' fees, litigation expenses, and other costs that Plaintiffs incur in pursuing this action as authorized by 29 U.S.C. § 2104(a)(6).

52. Plaintiffs request that the Court grant them and all other Class Members any such other relief as it may deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE**.

Plaintiffs,
**Frank G. Treadway, Joey Clark Hatfield, and Charles W. Hensley,**
By counsel:

\s\ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
(304) 344-3144
Fax: (304) 344-3145
Email: sam@msjlaw.org
bren@msjlaw.org