IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| FRANK G. TREADWAY,<br>JOEY CLARK HATFIELD,<br>and CHARLES W. HENSLEY,<br>individually and on behalf of all others<br>similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>BLUESTONE COAL CORP.,<br>BLUESTONE INDUSTRIES, INC.,<br>and MECHEL BLUESTONE, INC.,<br><br>            Defendants. | CASE NO. 5:16–CV-12149<br>Honorable Judge Irene C. Berger |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY CLASS**

    Plaintiffs move to certify a class of all full-time employees of Mechel Bluestone, and those of its affiliates or subsidiaries, who were terminated, and/or subject to a reduction in force, at the Burke Mountain Strip Mine by the Bluestone Coal Corporation, Bluestone Industries, Inc., or Mechel Bluestone, Inc. from December 27, 2011 through March 26, 2012 (collectively referred to herein as the "Layoff"). The putative Class Members hold identical claims for identical remedies consisting of sixty days' pay and the consequent loss of benefits during that period. A Rule 23 class action is widely regarded, including within the United States Fourth Circuit Court of Appeals, as the optimal legal process for resolving WARN Act claims. The proposed class and its named representatives satisfy all of Rule 23's requirements, and fulfill the objective and rationale for efficiently resolving such claims on a class-wide basis.

# ARGUMENT

**I. RULE 23 IS THE MOST APPROPRIATE METHOD FOR ADMINISTRATION OF FOR WARN ACT CLAIMS.**

"District courts have 'wide discretion in deciding whether or not to certify a proposed class,' and their decisions 'may be reversed only for abuse of discretion.'" *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29 (4th Cir.1989)). Within the United States Fourth Circuit Court of Appeals and elsewhere, courts have found that "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *See, e.g., Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) (cited approvingly in *Nolan v. Reliant Equity Investors, LLC*, 2009 U.S. Dist. LEXIS 69765 (N. D. W. Va. Aug. 10, 2009) (certifying a Rule 23(b)(3) class consisting of all individuals who worked at the AB&C Group facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, and who lost their jobs when those facilities all closed in March, 2008.).

**II. PLAINTIFFS' PROPOSED CLASS.**

Plaintiff's proposed class consists of:

All persons who were terminated from full-time employment, or were subject to a reduction in force as full-time employees, at the Burke Mountain Strip Mine by the Bluestone Coal Corporation, Bluestone Industries, Inc., or Mechel Bluestone, Inc. from December 27, 2011 through March 26, 2012.

Plaintiff requests that the Court certify the class as proposed above.

**III. STATEMENT OF FACTS REGARDING PROPOSED CLASS.**

In the month of December 2011, Defendants employed more than 100 employees, including Plaintiffs, at the Burke Mountain Strip Mine. The Burke Mountain Strip Mine is located on the ridge known as Burke Mountain that generally runs for several miles in a southerly direction

originating from the headwaters of the areas known as Pinnacle Creek and White Oak Creek in Wyoming County. The Burke Mountain Strip Mine consisted of connected mining pits and work areas known as Jobs 32, 34, 39, the Keystone No. 2 preparation plant ("K2"), and the Blue Building. The Burke Mountain Strip Mine was entirely under the *de jure* and *de facto* ownership and control of Defendants (collectively, "Bluestone") as a single employer, as set forth more fully below. Bluestone owned, controlled, operated, and maintained the Burke Mountain Strip Mine.

Plaintiffs were employed at Bluestone's Burke Mountain Strip Mine prior to the Layoff. Effective no later than the 90-day period ending on or about March 26, 2012, at least approximately 105 full-time employees, including Plaintiffs, were laid off by Defendants at the Burke Mountain Strip Mine. (*See* Compl. ¶¶ 17-23.) Neither the Plaintiffs, nor a representative of the collective bargaining unit of the United Mine Workers of America representing workers at Burke Mountain, received written notice that the employees would be laid off prior to the occurrence of the Layoff itself. (*See id*. ¶ 24.) The Defendants withheld not only wages but also benefits that were due to the employees during the 60 days following the mass layoff or plant closing. (*See* DE 9-3 Letter from Bluestone Coal Corporation to Frank Treadway indicating that Bluestone terminated Frank's dental benefits less than 60 days after his layoff (Ex. 1).)

## IV. LEGAL ARGUMENT AS TO STANDING UNDER WARN ACT

The Plaintiffs possess statutory standing to bring their claims under the WARN Act and to seek class certification for those claims, as set forth below. Upon information and belief, the Constitutional standing of the Plaintiffs is uncontested as to this matter.

### A. Plaintiffs and Proposed Class Satisfy the Elements of a Claim under the WARN Act.

The legal claim lodged by the Plaintiffs in this proceeding arises under the WARN Act, 29 U.S.C. Sec. 2102 *et seq*. The WARN Act requires employers to provide sixty (60) days

written notice of a mass layoff to affected employees or their collective bargaining representative. *See* 29 U.S.C. Sec. 2102(a), (a)(1). Under 29 U.S.C. Sec. 2101(a)(3), a "mass layoff" is a reduction in force which "(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for"… "(I) at least 33 percent of the employees …" and "(II) at least 50 employees …" 29 U.S.C. Sec. 2101(a)(3). Part-time employees are not considered in determining whether a mass layoff has occurred. *Id*. An employer's failure to provide the required written notice triggers a consequent liability to full-time employees who were subject to the mass layoff or plant closing pursuant to 29 U.S.C. Sec. 2104(a).

Employment losses may be aggregated over any ninety (90)-day period to constitute a mass layoff or plant closing under the WARN Act. *See* 29 U.S.C. Sec. 2102(d).

> For purposes of this section, in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

29 U.S.C. Sec. 2102(d).

Here, the Plaintiffs allege that they experienced unnoticed employment losses in December 2011 through March 2012 that, in the aggregate, constituted a mass layoff and/or plant closing giving rise to liability under the WARN Act. (DE 1, Compl. ¶¶ 17-28, 29-38). Further discovery will be necessary in order to verify the extent of the layoffs incurred by the putative class during the 90-day period within which the layoff is alleged to have occurred.

**B.** **Bluestone Industries, Bluestone Coal Corporation, and Mechel Bluestone are a Single Employer Under the WARN Act, Having Jointly Directed and Carried out**

**the Employment Action Giving Rise to the Claim.**

The WARN Act defines an employer as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …" 29 U.S.C. Sec. 2101(A)(1)(a)-(b). Department of Labor regulations stipulate that "[u]nder existing legal rules, independent contractors and subsidiaries which are wholly or partially owned" by a corporate parent "are treated as separate employers or as a part of the parent or contracting company" based on "the degree of the independence from the parent." 20 C.F.R. Sec. 639.3(a)(2).

The WARN Act principally relies on a "single employer" standard for determining whether two or more affiliated corporations should be viewed as a single employer in order to meet the 100 employee WARN Act threshold. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 504 (3rd Cir. 2001). The WARN Act draws on the flexible single-employer standard used in labor law: "The policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Murray v. Miner*, 74 F.3d 402, 405 (2nd Cir. 1996).

The WARN Act regulations provide for an even more liberal single-employer standard than is traditionally provided under the single-employer rule.[1] In fact, the single employer status of WARN Act defendants was simply stipulated by the parties in the leading United States Fourth Circuit Court of Appeals WARN Act case involving a coal mine layoff, *United Mine Workers of America Int'l Union v. Martinka Coal Co. and Eastern Associated Coal Corp.*, 202

---

[1] For example, even third-party lenders or creditors may be liable under the WARN Act. *See, e.g., Adams v. Erwin Weller Co.*, 87 F.3d 269 (8th Cir. 1996).

F.3d 717, 719, n.1 (4th Cir. 2000). The relationship between the defendants in *Martinka* was exactly the same as the relationship that Mechel Bluestone has with the mining facilities in this case:

> The appellants Eastern Associated Coal Corporation and Martinka Coal Company are sister corporations, both wholly-owned subsidiaries of Coal Properties Corporation. During the period relevant to this appeal, the companies were parties to a management agreement under which Eastern provided management and administrative assistance related to Martinka's business and properties. The parties have agreed that, for the limited purpose of this litigation, the actions or inactions of agents and employees of Eastern can be imputed to and considered the actions or inactions of Martinka.

*Id*.

In the instant case of the Burke Mountain Strip Mine, the Defendants openly held themselves out to operate as a single employer by including the names and/or logos of Bluestone Industries and Bluestone Coal Corporation on the letterhead that the Bluestone Defendants jointly sent out from their common office to the Burke Mountain employees regarding the Layoff that gave rise to the WARN Act liability in this case. (*See* DE 9-2 Letter to Plaintiff Frank Treadway from Myra Boland, "Group Benefits Administrator" (Ex. 2); Ex. 3 (payroll records indicating that Myra Boland was on the payroll of Bluestone Industries).) As further indicia of Mechel Bluestone's single employer status, the Defendant Mechel Bluestone entered a single Neutrality and Card Check Agreement with the United Mine Workers of America that was applicable to all of the employees at Burke Mountain. (*See* DE 9-1 Neutrality and Card Check Agreement (Ex. 4).) Further more, Mechel Bluestone exercised unified control of employee discipline through Mechel Bluestone's Standard Attendance Control Program that was applicable to all of its operations in West Virginia. (*See* Ex. 5 (Mechel Bluestone Standard Attendance Control Program).) As set forth more fully below, it is plain that Mechel Bluestone exercised *de facto* and *de jure* control over the decisions regarding when to idle and lay off the workforce at

-6-

its coal mine operations including the Burke Mountain Strip Mine.

Mechel Bluestone, Bluestone Industries, and Bluestone Coal Corporation jointly employed and directed the actions of the supervisory employees who managed coal production, coal sales, maintenance, and the mine planning processes at the Burke Mountain Strip Mine, such as the determination to cease coal production that caused the Layoff at issue in this case. (*See* Ex. 6 (Dep. of Tommy D. Lusk at 79:17-82:3).) Mechel Bluestone and its Russian affiliate Mechel Mining closely managed the Bluestone operations through the Bluestone Industries and Bluestone Coal Corporation, as well as Nufac Mining (the Mechel Bluestone subsidiary in whose name Mechel Bluestone had permitted the K2 preparation plant on Burke Mountain) in the form of operational planning, management, capital, budgeting, and Human Resources services. (*See id.*). Longtime Bluestone executive Tommy Dewayne Lusk served as superintendent of maintenance and coal production for Bluestone Coal Corp. and was later promoted to general manager, vice president, and chief operating officer of Bluestone Industries as well as serving as an officer and director for Mechel Bluestone and several of its operating units. (*See id.* at 18:10-21; 22:14-18; 23:19-22; 24:1-7; Ex. 7 (Mechel Bluestone corporate officers 2012, listing Tommy D. Lusk as president).)

Mr. Lusk has testified that Mechel Bluestone and Bluestone Industries coordinated virtually all coal production orders for the Burke Mountain Strip Mine and all other Bluestone locations. (*See id.* at 36:18-20.) The business managers at Mechel Bluestone and its affiliate Mechel Mining set the operating budget for each Bluestone mine. (*See id.* at 78:3-79:2.) If the Defendants' operations required additional capital beyond the amount budgeted for a given period, the superintendents of those operations made requests to Mechel Bluestone's Russian directors, even in order to obtain something as minor as additional rock dust or ground control

supplies. (*Id.*) Most notably, the Human Resource representative who signed the layoff notices at issue in this case was a common employee of the Defendants—on the Bluestone Industries payroll and located at the Mechel Bluestone office in Beckley. (*Cf.* DE 9-2, 9-3 (Exs. 2, 1)).

The Department of Labor's WARN Act regulations provide five factors for ascertaining single employer status, which are generally compatible with the "single employer" doctrine from labor law. *See* 20 C.F.R. § 639.3(a)(2) ("(i) common ownership, (ii) common directors and/or officers, (iii) *de facto* exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations."); *cf. Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3rd Cir. 2001). Under the WARN Act, the *de facto* control factor "carries special weight" in the five-factor test. *See Pearson*, 247 F.3d at 504. "These five factors constitute a non-exhaustive list and the fact-finder may consider other evidence of entanglement." *See In re Tweeter OPCO, LLC*, 453 B.R. 534 (Bankr. D. Del. 2011); *cf. Pearson v. Component Tech. Corp.*, 247 F.3d at 495.

The core inquiry under the *de facto* control factor, for WARN Act purposes, is "whether the parent [or lender] has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *Pearson*, 247 F.3d at 491; *see also In re APA Trans. Corp. Consol. Litig.*, 541 F.3d 233, 245 (3d Cir. 2008) (*de facto* exercise of control factor looks at who was the decision-maker responsible for the employment practice giving rise to the litigation). "[I]f the *de facto* exercise of control was particularly striking – for instance, were it effectuated by 'disregard[ing] the separate legal personality of its subsidiary['] – then liability might be warranted even in the absence of the other factors." *Id.* (citing *Esmark, Inc. v. NLRB*, 887 F .2d 739, 757 (7th Cir. 1989)).

Here, Mechel Bluestone's Human Resources employee, Myra Boland, personally signed

the layoff correspondence, indicating that the Bluestone Defendants were jointly involved in planning and executing the Layoff and undertaking the communications directly with employees that were necessary to execute the layoff. Therefore, on this basis alone the Defendants Bluestone Industries and Mechel Bluestone may be viewed as *de facto* controllers even in the absence of the other factors. Additionally, further evidence at trial will establish the remaining four factors as well.

**C.    Burke Mountain Strip Mine Constituted a Single Site of Employment**

Whether the Burke Mountain Strip Mine constitutes a "single site of employment" is a mixed question of law and fact. *See Davis v. Signal Int'l Texas GP*, 728 F.2d 482, 485 (5th Cir. 2013.). While the WARN Act does not define "single site of employment," the U.S.s Department of Labor regulations provide interpretive guidance. A "single site of employment" can refer to a "single location" or a "group of contiguous locations." 20 C.F.R. Sec. 639.3(i)(1). The regulations indicate that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" may constitute a single site of employment, "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another." 20 C.F.R. Sec. 639.3(i)(3).

Here, to the extent that the Burke Mountain Strip Mine involved multiple sections or areas, they were all located within reasonable geographic proximity to one another atop Burke Mountain, pursuing the same operational purpose using the same work crews, same equipment, and same facilities. (*See* Ex. 8, map of the permits issued to Defendants by the W.Va. Dept. Envtl. Protection at the Burke Mountain Strip Mine; *cf.* Ex. 9, permit details for the Defendants' Burke Mountain Strip Mine, describing seven contiguous and connected permits held by

Bluestone Coal Corporation, which are directly connected by haulage routes to one another and to the Defendants' coal preparation facilities where the coal was sent by truck for processing). The entire Burke Mountain Strip Mine was used for the same operational purpose of mining or moving coal from the Sewell and/or Pocahontas No. 11 coal seams. (*Id*.) (noting the coal was produced from the Sewell and Pocahontas No. 11 seams). The coal-mining permits at the Burke Mountain site are all coterminous and otherwise directly connected by the same haulage roadways that are permitted in the name of the same Defendants, and connected to the Defendants' coal preparation facilities. (*Id*.).

Plaintiff Joey Clark Hatfield maintained meticulous notes regarding his daily work activities, demonstrating that work crews were routinely moved between the three principal areas of the Burke Mountain Strip Mine during the year leading up to Mr. Hatfield's termination from Burke Mountain. (*See* Ex. 10, Hatfield daily log). The three principal areas of the Burke Mountain Strip Mine in 2011 and 2012 were known colloquially to the workers as Jobs 32, 34, and 39. (*See id*.); (*Cf*. Ex. 8, map). On each page of his notes, from left to right, Mr. Hatfield documented the date worked, along with a distinct identifying number for the piece of equipment that he operated that day, as well as the number hours that he worked, and which part of the Burke Mountain Strip Mine that he worked on that day. (*Id*.) Pieces of mobile mining equipment that Mr. Hatfield operated on multiple areas of the Burke Mountain Strip Mine included a Caterpillar 9926-model front end loader numbered "736," among other Caterpillar front end loaders and rock trucks. (*See id*. at 3-4).

Should the Court determine to certify the class, the process of class discovery will further reveal the substantial degree to which the Burke Mountain Strip Mine, inclusive of the areas known as Jobs 32, 34, and 39, constituted a single site of employment under the WARN Act.

## IV. PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23.

Rule 23 of the Federal Rules of Civil Procedure governs the institution of class actions in federal district court, requiring a two-step analysis to determine if class certification is appropriate. *See e.g. Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 101 (W.D. Va. 2000). The proponent of class certification must satisfy all four of the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006).

Specifically, Rule 23 requires a plaintiff to demonstrate as follows for the maintenance of class actions:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is **so numerous that joinder** of all members **is impracticable**;
> (2) there are **questions of law or fact common** to the class;
> (3) the **claims or defenses** of the representative parties **are typical** of the claims or defenses **of the class**; and
> (4) the representative parties will **fairly and adequately protect** the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (emphasis added). When these requirements are satisfied, the case should be allowed to proceed on behalf of the proposed class. *Cf. Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29

(4th Cir.1989)) (noting the district court's broad discretion in certifying a class).

Here, the Plaintiffs are affected employees as defined by 29 U.S.C. § 2101(a)(5), for purposes of the WARN Act, because they are employees who reasonably expected to experience an employment loss, and who did in fact experience an employment loss, as a consequence of a mass layoff ordered by Bluestone. Plaintiffs and Bluestone's other aggrieved and affected employees experienced a common employment loss as a result of the Layoff, in which they were laid off for a period exceeding six months.

The Class Members have minimal interest in controlling the litigation individually because the scope of relief is narrowly circumscribed by the statute, being generally limited to sixty days of wages, benefits, interest, fees, and costs. *See* 29 U.S.C. § 2104. Thus, individual control could not yield materially more favorable types of relief than could the class action.

**A.     Numerosity: The Class Satisfies Rule 23(a)(1)'s Numerosity Requirement.**

The Class Members are so numerous that joinder of all Class Members is impracticable. Defendants laid off approximately 105 employees in violation of the WARN Act. The putative Class Members are distributed geographically across several southern counties in the State of West Virginia.

"Impracticality of joinder is not determined by a numerical test alone." *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W. Va. 1981) (citing *Ballard v. Blue Shield of Southern West Virginia*, 543 F.2d 1980 (4th Cir. 1976); 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS ACTIONS § 3.06 (3d ed. 1992). "Factors relevant to the evaluation of numerosity include . . . the negative impact on judicial economy if individual suits were required." *Black v. Rhone-Poulenc, Inc.,* 173 F.R.D. 156, 160 (S.D.W. Va. 1996) (Haden, C.J.) (quoting *United Brotherhood of Carpenters & Joiners of America, Local 899 v. Phoenix Assocs.,*

*Inc.*, 152 F.R.D. 518, 522 (S.D.W. Va. 1994)); *see also* NEWBERG & CONTE, *supra*, § 3.06. Because plaintiffs under the WARN Act may only receive a limited amount of statutory damages, akin to a liquidated damages payment, it would have a needless and a negative impact on judicial economy if these claims—that have essentially identical facts and necessarily identical relief—were tried in separate cases.

**B.      Commonality: the Class Satisfies Rule 23(a)(2)'s Commonality Requirement Because The Class Members Share Common Facts And Legal Issues.**

There are questions of law or fact common to the Class Members that predominate over any questions affecting only individual Class Members. As noted above, "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *See e.g. Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) (citing *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

Here, as noted above, Defendants laid off approximately 105 employees within a ninety-day period during the months of December 2011, and January, February, and March 2012, in connection with the reduction in force that affected Plaintiff's site of employment. (*See* Compl. ¶¶ 17-23). Neither the Plaintiffs, nor a representative of the collective bargaining unit of the United Mine Workers of America representing workers at Burke Mountain, received written notice that the employees would be laid off prior to the occurrence of the Layoff itself. (*See id*. ¶ 24).

Even if there were some minor factual variation among the putative Class Members, it

would not render class certification inappropriate because the class claim arises out of a single mass layoff or plant closing. *Christman v. American Cynamid Co.*, 92 F.R.D. 441, 452 n. 28 (N.D.W.Va. 1981) ("When the [class] claim arises out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment."); *see also Hosey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) ("Despite the presence of individual factual questions, the commonality criterion of Rule 23(a) is satisfied by the common questions of law presented."). Here, the class claims arise from exactly the same legal theories and same triggering event under the WARN Act.

The principal factual question in this case is whether Bluestone failed to provide adequate written notice of the Layoff. The principal legal question is whether Bluestone's failure to provide such notice constituted a violation of the WARN Act. Thus, the ultimate question is whether Bluestone's failure to provide written notice 60 days prior to the plant closing or mass layoff constituted a violation of the WARN Act. The legal result and the consequent remedy—i.e. entitlement to 60 days of back pay and benefits—is essentially identical for each putative Class Member.

**C.** **Typicality: The Class Satisfies Rule 23(a)(3)'s Typicality Requirement Because the Claims of the Named Plaintiff Are Identical to Those of the Class Members.**

The claims and defenses of the Plaintiff are typical of the claims or defenses of the Class Members as a whole because the Class Members are similarly affected by Bluestone's wrongful conduct of failing to provide adequate notice in violation of the WARN Act. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting NEWBERG & CONTE, *supra*, § 3.13). In other words, "precise, mirror-image identity" of injuries

is not required. *Kennedy*, 138 F.R.D. at 488 (quoting *Int'l Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981)); *see also, e.g., Phoenix Assocs., Inc.*, 152 F.R.D. at 522 (stating typicality "requires that the representatives' claims be typical of other class members' claims, not that the claims be identical").

The typicality rule assures that the class representatives' interests are "aligned" with those of the class. *Kennedy*, 138 F.R.D. at 488. "This [typicality] factor and the commonality requirement often merge." *Rhone-Poulenc*, 173 F.R.D. at 161. As noted by the Supreme Court, these two prerequisites, along with the adequacy of representation requirement "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)) (internal citations omitted) ("[T]here appears to be little or no need for this [typicality] clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23").

The claims and defenses involving the Plaintiffs are typical of the claims and defenses involving the Class Members as a whole because they all worked for Defendants and suffered a common employment loss, as set forth above and in the Complaint. (*See* Compl. ¶¶ 7, 17-23.) "When it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Black v. Rhone-Poulenc, Inc.*,173 F.R.D. 156, 162 (S.D.W. Va. 1996) (Haden, C.J.) (quoting 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS ACTIONS § 3.13 (3d ed. 1992)).

**D.     Fair and Adequate Representation: The Class Satisfies Rule 23(a)(4)'s Adequacy Requirement Because the Plaintiff Has No Conflicts with the Class Members and Will Vigorously Prosecute their Interests.**

The Plaintiffs will fairly and adequately protect the interest of the Class Members because Plaintiffs have no conflict with other Class Members, and they have demonstrated commitment to this claim by researching their rights and seeking counsel, and because Plaintiff is represented by counsel who are competent and experienced.

"When assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting *Phoenix Assocs., Inc.*, 152 F.R.D. at 523)). "[T]he two factors that are now predominantly recognized as the basic guidelines for the Rule 23(a)(4) prerequisite [as to representative plaintiffs] are (1) absence of conflict and (2) assurance of vigorous prosecution." *Id.* (quoting NEWBERG & CONTE, *supra*, § 3.22).  Regarding adequacy of class counsel, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* Here, the class counsel have experience both in class action litigation generally, and in employment and mining-related litigation specifically.

In this case, the named Plaintiffs' interests are clearly aligned with those of the Class Members.  The class representatives in this case do not have interests which are antagonistic to the interests of the class as a whole.  Rather, the named representative and the other Class Members have a common interest in seeing that the workforce receives the full complement of wages and benefits that they are due under the WARN Act —if the damages are not due to a class entirely, then they are not due to the class representative.

Plaintiff's counsel are employed by Mountain State Justice, Inc. a non-profit law firm that represents low-income and working-class persons, and has represented numerous other class actions, including class litigation under the WARN Act. Bren J. Pomponio, an attorney practicing law at Mountain State Justice in Charleston, West Virginia, has been a member of the West Virginia Bar since October 1998, and has served as class counsel in more than a dozen cases both in the United States District Court for the Southern District of West Virginia and West Virginia state courts.

Sam Petsonk is an attorney practicing law at Mountain State Justice in Charleston, West Virginia, and has held legal fellowships through the Skadden Fellowship Foundation and the American Bar Association's Steiger Fellowship for Consumer Protection. Sam has been a member of the West Virginia Bar since April 2014, and regularly represents coal miners in safety grievances and various employment matters, including employment class action litigation involving the WARN Act and other post-employment benefits issues. He is admitted to practice before the West Virginia Supreme Court of Appeals and the United States District Courts for the Southern and Northern Districts of West Virginia. Accordingly, Plaintiff's counsel are qualified to conduct this litigation.

The Plaintiffs have no conflicts with the Class Members and have demonstrated ongoing commitment to vigorously pursuing this matter with competent representation on behalf of the putative Class, and altogether satisfies the requirements of Rule 23(a)(4).

## V. CONCLUSION

As set forth herein, a class action is superior to all other available methods for the fair and efficient adjudication of this controversy because (a) joinder of all Class Members is impracticable, (b) many of the Class Members are likely unemployed and not in a position to

retain counsel, and (c) each individual Class Member has suffered damages that are merely modest, principally the loss of two months of pay and benefits. Therefore, there will be no difficulty in the management of this class action and concentration of the claims in this forum will promote judicial economy.

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed Class as defined above.

Plaintiffs,
**FRANK G. TREADWAY,**
**JOEY CLARK HATFIELD,**
**and CHARLES W. HENSLEY,**
By counsel:

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
(304) 344-3144
Fax: (304) 344-3145
Email: sam@msjlaw.org
bren@msjlaw.org