# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

FRANK G. TREADWAY, et al.,

        Plaintiffs,

v.                                          CIVIL ACTION NO.  5:16-cv-12149

BLUESTONE COAL CORP., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiffs' *Motion to Certify Class*, (Document 15), the *Memorandum of Law in Support of Motion to Certify Class* (Document 16), the *Defendants' Brief in Opposition to Plaintiffs' Motion to Certify Class* (Document 17), the Plaintiffs' *Reply to Defendants' Response to Motion to Certify Class* (Document 18), and all attached exhibits. For the reasons stated herein, the Court finds that the Plaintiffs' motion should be granted.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For the purpose of this motion, the Court adopts the following facts from the Plaintiffs' pleadings and the parties' briefing on class certification. The Plaintiffs initiated this action by filing a *Complaint* (Document 1) in this Court on December 14, 2016, alleging that the Defendants violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §2101 *et seq.*, by failing to provide a sixty-day notice to employees of a pending layoff. (Compl., at 1.)

1

The Defendant, Bluestone Coal Corporation (Bluestone Coal), jointly with Bluestone Industries, Inc. (Bluestone Industries) and Mechel Bluestone, Inc. (Mechel Bluestone), owned and operated several coal mining and producing facilities in Wyoming County, West Virginia, including a surface coal mining site known as the Burke Mountain Strip Mine. (*Id.* at ¶ 1, 7-8.) As of December 2011, Plaintiffs Frank G. Treadway, Joey Clark Hatfield, and Charles W. Hensley were full time employees of Mechel Bluestone at the Burke Mountain Strip Mine. (*Id.* at ¶ 1-3.) On or about December 28, 2011, the Defendants verbally informed all of their employees at the Burke Mountain Strip Mine that they were laid off "for an indefinite period." (*Id.* at ¶ 17.) This occurred again on February 11, 2012, and March 2, 2012. (*Id.* at ¶ 18-23.) Between December 28, 2011, and March 2, 2012, approximately 105 employees, including the three named Plaintiffs, were laid off at the Burke Mountain Strip Mine. (Pls.' Mem. of Law in Supp. at 3.) Neither the Plaintiffs nor their collective bargaining representative, the United Mine Workers of America, received written notice of the layoff. (Compl. at ¶ 25.) Further, the laid-off employees did not receive mandatory graduated days or holiday pay, and their medical and dental coverage was improperly terminated. (*Id.* at 26-27.) The Plaintiffs claim that Mechel Bluestone possessed de facto and dejure control over the Burke Mountain Strip Mine such that it ultimately made the decision as to when to idle the mine's operations and lay off workers. (Pls.' Mem. of Law in Supp. at 6-7.)

According to the Plaintiffs, Mechel Bluestone exercised direct supervisory authority over the Burke Mountain Strip Mine, including "direct[ing] the actions of the supervisory employees who managed coal production, coal sales, maintenance, and the mine planning process . . . ." (*Id.* at 7.) The Plaintiffs further allege that Mechel Bluestone and its affiliates, Bluestone Industries

2

and Bluestone Coal Corporation, "closely managed" the Burke Mountain site "in the form of operational planning, management, capital, budgeting, and Human Resources services." (*Id.*) According to the testimony of Mr. Tommy Lusk, superintendent of coal production for Bluestone Coal Corp., Mechel Bluestone and Bluestone Industries "coordinated virtually all coal production orders for the Burke Mountain Strip Mine and all other Bluestone locations." (*Id.*) (Pls.' Ex. 6, Depo. of Tommy D. Lusk, at 36:18-20.) Myra Boland, a Bluestone Coal Corp. employee, was the Human Resources representative who signed the Plaintiffs' layoff notices, and contacted Mr. Treadway concerning his unemployment benefits on Bluestone Coal Corp. letterhead. (Pls.' Mem. of Law in Supp., Ex. 2.)

## APPLICABLE LAW

A. *Federal Rule of Civil Procedure 23*

Federal Rule of Civil Procedure 23 ("Rule 23") governs class action certification. Rule 23(a) states that:

> "one or more members of a class may sue" as "representative parties" if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class."

More succinctly, Rule 23(a) requires a potential class plaintiff to show numerosity, common questions of law or fact, typicality, and adequacy of representation. *Id*. Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and limits the class to those with claims "fairly encompassed by the named plaintiff[]." *Dukes v. Walmart Stores*, 131 S.Ct. 2541, 2550 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). Rule 23(a) is not a "mere pleading standard." Rather, the rule requires that "[a] party seeking class certification must affirmatively demonstrate his

3

compliance," by being "prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551.

However, a plaintiff seeking class certification must also satisfy one of the subsections of Rule 23(b). *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). Here, the Plaintiffs seek class certification under Rule 23(b)(3), which requires the Court to determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The four factors for courts to consider under Rule 23(b)(3) are:

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties of managing a class action." *Id*.

A district court has broad discretion to decide whether to certify a class action under Rule 23, but the plaintiff bears the burden of proof in establishing all requirements of Rule 23. *Leinhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)); *Int'l Woodworkers of Am. V. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981). At the class certification phase, the district court must "take a close look" at the "facts relevant to the certification question, and, if necessary, make specific findings" relevant to certification. *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citing *Gariety v. Grant Thornton*, LLP, 368 F.3d 356, 365 (4th Cir. 2004)). These findings are necessary, even if "the issues tend to overlap into the merits of the underlying case." *Id*., citing *Falcon*, 457 U.S. at 160 ("[S]ometimes it may be necessary for the [district] court to

probe beyond the pleadings before coming to rest on the certification question."); *Gariety*, 368 F.3d at 366.

    B.  *The WARN Act, 29 U.S.C. §2102 et seq.*

In this case, the alleged "common question of law or fact" raised by the Plaintiffs arises under the WARN Act, 29 U.S.C. §2102 *et seq.* The WARN Act requires employers to provide sixty (60) days written notice of a mass layoff to affected employees or their collective bargaining representative. 29 U.S.C. §2102(a), (a)(1). Under 29 U.S.C. §2101(a)(3), a "mass layoff" is a reduction in force which "(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for"… "(I) at least 33 percent of the employees …" and "(II) at least 50 employees …" 29 U.S.C. §2101(a)(3). Part-time employees are not considered in determining whether a mass layoff has occurred. *Id.*

The WARN Act defines an employer as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …" 29 U.S.C. §2101(A)(1)(a)-(b). Department of Labor regulations stipulate that "[u]nder existing legal rules, independent contractors and subsidiaries which are wholly or partially owned" by a corporate parent "are treated as separate employers or as a part of the parent or contracting company" based on "the degree of the independence from the parent." 20 C.F.R. §639.3(a)(2). "Some of the factors" for courts to use in determining whether a subsidiary and a parent constitute a common employer are "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id.*

5

Whether the Burke Mountain Strip Mine constitutes a "single site of employment" is a mixed question of law and fact. *Davis v. Signal Int'l Texas GP*, 728 F.2d 482, 485 (5th Cir. 2013). Pursuant to Department of Labor regulations, a "single site of employment" can refer to a "single location" or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). The general rule is that "separate facilities are separate sites." *Davis*, 728 F.2d at 485, citing 54 Fed.Reg. 16042, 16050 (Apr. 21, 1989). Of particular relevance to this case, the regulations indicate that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" may constitute a single site of employment, "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." 20 C.F.R. § 639.3(i)(3). By contrast, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R. § 639.3(i)(4). Similarly, "[c]ontiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate sites of employment." 20 C.F.R. § 639.3(i)(5). The Department of Labor regulations also note that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the [preceding paragraphs] do not reasonably apply." 20 C.F.R. § 639.3(i)(8).

**DISCUSSION**

A threshold issue in motions for class certification is whether the plaintiff satisfies the standing requirement. Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, §2; *see also Rhodes v. E.I. Du Pont de Nemours and Co.*, 636 F.3d 88, 99 (4th Cir. 2011). A case must be brought by a party with a "personal stake" in the litigation." *Id.*, citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388,

396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008). In a class action, the plaintiff must not only have a "personal stake" in the litigation, but also must have "a distinct procedural right" to represent "the interests of similarly situated individuals." *Id.*, citing *Geraghty*, 445 U.S. at 402. In this case, the parties do not contest the question of whether the Plaintiffs have Constitutional standing to bring the present case. Thus, the Court finds that the Plaintiffs' cause of action satisfies, at a minimum, the requirements of Article III.

### A. *WARN Act Standing*

In order to determine whether the Plaintiffs have a valid statutory cause of action under the WARN Act, and before applying Rule 23(a) and (b) to the Plaintiffs' proposed class, the Court must next determine whether the Plaintiffs can bring a WARN Act class claim on behalf of all of the miners laid off at the Burke Mountain Strip Mine. This includes determining whether the Defendants constitute a "single employer" under the Act, and whether the Burke Mountain Strip Mine constitutes a "single site of employment."

#### 1. *Single Employer*

The Department of Labor regulations set forth five factors for determining whether a parent corporation and its subsidiaries constitute an "employer" under the WARN Act: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. §639.3(a)(2). Here, the Defendants do not contest that they are a single employer of the employees at the Burke Mountain Strip Mine. Further, the Court finds that the Plaintiffs have provided sufficient evidence to satisfy these factors. The Defendants maintained ownership of

the Burke Mountain Strip Mine, and as previously stated, Mr. Lusk testified that Bluestone Industries and Mechel Bluestone exercised control over Burke Mountain in managing coal production, coal sales, maintenance, and mine planning, and shared officers and directors. Mechel Bluestone's Human Resources director signed layoff correspondence drafted on Bluestone Industries letterhead, suggesting that Bluestone had de facto control over the layoffs giving rise to this litigation. Thus, because the Defendants have not contested that Bluestone was a single employer, and because the Plaintiffs have satisfactorily proven that Bluestone exercised de facto control over the Burke Mountain Strip Mine, the Court finds that Bluestone was a single employer for the purposes of class certification.

2. *Single Site of Employment*

Second, the Court must determine whether the area encapsulating the Burke Mountain Strip Mine constitutes a "single site of employment" under the WARN Act. Whether or not a job site constitutes a single site of employment is determined by whether (1) the work areas are in a reasonable geographic proximity, (2) they share the same operational purpose, and (3) they share the same staff and equipment. 20 C.F.R. §639.3(i)(3). Here, the Plaintiffs attempt to define and limit their class to "[a]ll full-time employees who were subject to a reduction in force from full-time employment at the Burke Mountain Strip Mine by the Bluestone Coal Corporation, Bluestone Industries, Inc., or Mechel Bluestone, Inc., from December 27, 2011 through March 26, 2012." The Defendants again do not contest that the Burke Mountain Strip Mine was a single site of employment, and the Burke Mountain site satisfies all of the previously listed elements. To the extent that there were different work areas encompassing the Burke Mountain Strip Mine, all of those areas were in a reasonable geographic proximity to one another atop Burke Mountain, were

connected by haulage routes, were issued mining permits in the name of the Defendants, and were connected to the Defendants' coal preparation plant. (*See*, Pls.' Mem. of Law in Supp., Ex. 8 and 9.) All of the areas or "Jobs" within the Burke Mountain Strip Mine, known as "Jobs 32, 34, and 39," were used for the purpose of surface mining the Sewell and Pocahontas No. 11 coal seams, and the Plaintiff Mr. Hatfield worked on various pieces of mining equipment on all three jobs. (*Id.* at Ex. 9-11.) Thus, the Court finds that Burke Mountain is a single mine and therefore constitutes a single site of employment for purposes of the WARN Act.

B.  *Rule 23*

Having found that the Plaintiffs' class definition satisfies the WARN Act's standing requirements, the Court must determine if the proposed class satisfies the class action requirements of Rule 23(a) and (b)(3).

At the outset, the Defendants contend that the Plaintiffs' class definition is fatally flawed for several reasons. The Defendants assert that the definition fails to account for miners who were not let go in violation of the WARN Act, who were not employed long enough for the WARN Act to apply, and because it spans a three-month period as opposed to a 30-day window as prescribed by the WARN Act. The Defendants further argue that the definition fails to be sufficiently precise, would require the Court to conduct "mini-trials" concerning each putative class member, and is an impermissible "fail-safe class in which 'the proposed class definition is in essence framed as a legal conclusion.'" (Defs.' Brief in Opp. at 3-4.) The Plaintiffs counter that the class is not defined too broadly because the Court can review payroll records to determine whether a class member was covered by the WARN Act and is not a fail-safe definition.

The Court finds that the Defendants' arguments are without merit. The Plaintiffs' class definition is not overly broad and only includes those putative class members who were laid off from the Burke Mountain Strip Mine within an aggregated ninety-day period pursuant to 29 U.S.C. § 2102(d) and does not use legal terms of art that amount to a fail-safe class definition. The Court finds that the class definition is not flawed.

*1. Numerosity*

Pursuant to Rule 23(a), the proposed class must be sufficiently numerous that "joinder of all members is impractical." In considering numerosity, the Court is not limited to consideration of sheer numbers and may consider the "negative impact on judicial economy if individual suits were required." *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 160 (S.D.W.V. Dec 19, 1996), quoting *United Brotherhood of Carpenters and Joiners of America, Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D.W.Va. Jan. 14, 1994).

Here, the Plaintiffs argue that their proposed class of miners is sufficiently numerous to make joinder impractical because the Defendants collectively laid off approximately 105 miners. The Plaintiffs further assert that because the WARN act only permits minimal damages, "akin to a liquidated damages payment," denying class certification would impede judicial economy by forcing workers to bring identical claims in separate suits. (Pls.' Mem. of Law in Supp., at 13.) The Defendants counter that the Plaintiffs have not precisely and sufficiently shown whether the putative class members were fired under the terms and conditions that the WARN Act requires, and without this information the Court is unable to correctly determine the numerosity requirement. As the Court previously held, the Plaintiffs' definition is not so broad that the Court cannot discern whether certain putative class members should not be a part of the class. Joinder

of 105 cases for all of the separate miners would clearly be impractical, and the Court therefore finds that the Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

    2. *Common Questions of Law and Fact*

In moving for class certification, the Plaintiffs argue that the proposed class members share common questions of law and fact under Rule 23(a)(2). Commonality requires more than just showing that the proposed class members share a "common question." Rather, under Supreme Court precedent, the Plaintiffs must show that the proposed class members have suffered "the same injury," derived from a "common contention" of the source of the injury. *Walmart v. Dukes*, 131 S.Ct. at 2550-51; *General Telephone Co. of Southwest v. Falcon*, 457 U.S. at 157. The Court finds that the proposed class satisfies the commonality requirement of Rule 23(a). The Court notes that as a general rule, the WARN Act is "particularly amenable to class-based litigation." *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F.Supp. 460, 465 (S.D.N.Y. December 4, 1989.) As the Plaintiffs point out, even "minor factual variation among the putative class members" does not bar the Court from granting class certification. (Pls.' Mem. of Law in Supp., at 13.) *See, e.g., Christman v. American Cynamid Co.*, 92 F.R.D. 441, 452 n.28 (N.D.W.Va. 1981) (citations omitted) ("When the [class] claims arise out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment"). The Defendant objects and argues that commonality is not satisfied because different outcomes are possible within the proposed class based on the union status of some of the employees and based on the particular site they worked on within the Burke Mountain mine.

The Court finds that the Plaintiffs have shown that the proposed class members share common questions of law and fact. As alleged, all proposed class members were laid off from

the same mine within the same time frame and all complain that the termination did not comply with the WARN Act. Further, as the Court previously determined, the Burke Mountain Strip Mine constitutes a single site of employment. Therefore, a determination of which particular part of the Burke Mountain mine the putative class members worked is irrelevant to the commonality question.

      *3. Typicality*

The typicality requirement of Rule 23(a)(3) requires the Court to assess whether the proposed class representative (the Plaintiffs) has claims and/or defenses which are "typical" of the members of the putative class. The Plaintiffs' "claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67. However, typicality does not require the Plaintiff's claim and those of the putative class members to be "perfectly identical or perfectly aligned;" rather, only "variation in claims [that] strikes at the heart of the respective cause[] of action" will result in denial of class certification." *Id.* at 467. The test for typicality involves a "comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id*.

Here, to establish a *prima facie* case under the WARN Act, the Plaintiffs must establish (1) that a mass layoff occurred and (2) that Bluestone failed to provide sixty days written notice of the layoff either to the Plaintiffs, or to the Plaintiffs' collective bargaining representative. 29 U.S.C. §2102(a); *see also Jim Walter Resources*, 6 F.3d at 722. The Plaintiffs contend that because all of the class members worked for Bluestone and suffered a common employment loss, the Plaintiffs' claims satisfy the typicality requirement. (Pls.' Mem. of Law in Supp., at 14.) The

Defendants counter that typicality is not satisfied due to "the atypical nature of this WARN Act case with multiple employer defendants, multiple sites of employment, and different employee statuses (e.g. union vs. non-union)." (Defs.' Brief in Opp. at 9.) However, the Court has previously held that the Plaintiffs and putative class members were employed by a single employer on a single site of employment and have standing under the WARN Act. The heart of this case is whether Bluestone unlawfully discharged the Plaintiffs and other putative class members in violation of the WARN Act, and the Court finds that the Plaintiffs satisfy the typicality requirement of Rule 23(a).

### 4. Adequacy of Representation

"When assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 162 (S.D.W.Va. December 19, 1996) (quoting *United Brotherhood of Carpenters and Joiners of America, Local 899 v. Phoenix Assoc., Inc.*, 152 F.RD. 518, 523 (S.D.W.Va. January 14, 2014)). The Plaintiffs can meet the standard by showing "interests common with, and not antagonistic to, the [c]lass interests …" *In re Southeast Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606-07 (W.D.N.C. 1993), citing *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 302 (D.Md.1977). The Court must also consider whether the class counsel is adequate. The test for adequacy of class counsel is "(1) absence of conflict and (2) assurance of vigorous prosecution." *Rhone-Poulenc*, 173 F.R.D. at 162, quoting 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS

ACTIONS §3.22 (3^(RD) Ed. 1992). Courts generally evaluate the "competence and experience" of class counsel, and will presume such attributes "in the absence of proof to the contrary."

The Court finds that the Plaintiffs will adequately represent the proposed class members, as they share a common claim, and have a significant financial stake in this litigation. *See In re Southeast Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. at 607. Further, the Plaintiffs' claim, like that of the proposed class members, will "stand or fall on the issue" of whether the Defendants' layoff procedures violated the WARN Act. *See Id.* The Court further finds that Plaintiff's counsel is adequate and satisfies the test described above. There is no evidence of a conflict of interest, and the Plaintiffs have proffered that their counsel has "served as class counsel in more than a dozen cases both in the United States District Court for the Southern District of West Virginia and West Virginia state courts." (Pls.' Mem. of Law in Supp., at 17.) The Defendants repeat the same objections previously argued regarding the other elements of class certification in which the Court has previously found no merit. Therefore, the Court finds that Plaintiffs have satisfied the adequacy of representation requirement of Rule 23(a)(4).

C. *Rule 23(b)*

The final hurdle the Plaintiffs must overcome in class certification is to satisfy the requirements of Rule 23(b). Here, the Plaintiffs seek to certify their class under Rule 23(b)(3). Pursuant to that rule, a Court can certify a class action where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3). Rule 23(b)(3) provides several factors for the Court to consider in making this determination. Specifically, Rule 23(b)(3) counsels the Court to

consider "the class members' interests in individually controlling the prosecution or defense of separate actions," along with the "extent and nature of any litigation" about this case already commenced by class members, the "desirability or undesirability of concentrating the litigation" in this forum, and "the likely difficulties in managing a class action." The predominance requirement of Rule 23(b)(3) is more stringent than the "commonality" requirement of Rule 23(a), and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d at 319, quoting *Gariety v. Grant Thornton*, LLP, 368 F.3d at 362. In assessing predominance, Courts "focus on the issue of liability." *Nolan v. Reliant Equity Investors, LLC*, 2009 U.S. Dist. LEXIS 69765, at *15 (ND.W.Va. August 10, 2009) (internal citations omitted).

Here, the Court finds that the Plaintiffs' proposed class is "sufficiently cohesive" to satisfy the predominance requirement. As the Plaintiffs have shown, the central question regarding all of the Plaintiffs and putative class members is simply the Defendants' liability pursuant to the WARN Act, and that question is common to all class members. Any individual questions of fact which may emerge for particular plaintiffs after certification are clearly subordinate to this central question. Further, the Plaintiffs' proposed class also satisfies the superiority requirement of Rule 23(b)(3). The absence of any pending litigation as to the relevant layoff suggests to the Court that a class action is the most appropriate means to adjudicate the controversy, and suggests a low risk that class members may benefit from adjudicating their claims individually. The Court notes that the relatively modest damages available to the Plaintiff under the WARN Act weighs against any vested interest in individual actions. *See Nolan*, 2009 U.S. Dist. LEXIS 69765, at *16. The absence of any conflicts of interest on the part of class counsel, and the fact that other courts have

found class actions to be the preferable method for resolving claims arising under the WARN Act also warrant such a finding. The Court has no concerns about the manageability of the proposed class beyond the "typical issues of language of the notice and provision of notice to class members." *See id*. The Court also finds that it is desirable to concentrate this litigation in the Southern District of West Virginia, where the relevant mine is located and the layoff at issue occurred. The Court has accepted the Plaintiff's proffer that there is no other pending litigation regarding the proposed class. The Court finds that the Plaintiff has satisfied Rule 23(b)(3).

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Motion to Certify Class* (Document 15) be **GRANTED**.

1. This action is hereby certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class certified (the "Class") is defined as follows, subject to any later modification pursuant to Rule 23(c)(1)(C): All persons who were terminated from full-time employment, or were subject to a reduction in force as full-time employees, at the Burke Mountain Strip Mine by the Bluestone Coal Corporation, Bluestone Industries, Inc., or Mechel Bluestone, Inc., from December 27, 2011 through March 26, 2012.

2. The Class claims are those alleged in the Plaintiffs' *Complaint*, specifically that the Defendant violated the WARN Act, 29 U.S.C. § 2102 *et seq*.

3. Plaintiffs Frank G. Treadway, Joey Clark Hatfield, and Charles W. Hensley are hereby appointed as Class Representatives.

4. The following are appointed jointly as Class counsel: Bren L. Pomponio and Samuel B. Petsonk of Mountain State Justice, Inc.

5. The Court will permit discovery as to possible modification of the class definition as well as to the merits of the case, and will entertain future motions for modification of the class definition.

6. The Plaintiff will submit to the Court a proposed Class notice document after conferring with opposing counsel.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 5, 2018

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA