IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**FRANK TREADWAY, et al.,**
**Plaintiffs,**

                                                      **Civil Action No. 5:16-cv-12149**
                                                      **Honorable Irene C. Berger**

**v.**

**BLUESTONE COAL CORP., et al.,**
**Defendants.**

## ORDER APPROVING FINAL SETTLEMENT

Pending before this Court is Plaintiffs' Motion to Approve Final Settlement, (ECF Doc. # 37), as well as the proposed final class notice. For the reasons set forth herein, the Court **APPROVES** the final settlement, in accordance with the terms stated in this Order, and **ORDERS** that the attorney fees and costs are fair and reasonable and that the Plaintiffs should be directed to issue notice to the class members of their rights under this Order.

### I.    PROCEDURAL BACKGROUND

On December 14, 2016, Mountain State Justice, Inc., filed this lawsuit on behalf of Frank G. Treadway, Joey Clark Hatfield, and Charles W. Hensley, seeking to recover damages under the WARN Act for all Coal Mountain miners. On January 27, 2017, the Defendants filed a Motion to Dismiss, arguing that the claim was subject to a two-year statute of limitations. Plaintiffs opposed that motion and argued a five-year statute of limitations applied to the claims and that Plaintiffs' claims were therefore timely. On May 22, 2017, the Court denied the Motion to Dismiss and found that the claims were subject to a five-year statute of limitations and could move forward towards trial. On March 5, 2018, this Court certified this matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). (ECF Doc. # 25.)

1

On April 23, 2018, the Parties reached a Mediation Agreement to resolve this litigation. (ECF Doc. # 37-1.) On October 12, 2018, the Court preliminarily approved the settlement and scheduled the matter for a fairness hearing on January 16, 2019. (ECF Doc. # 38.) At the hearing on January 16, 2019, the Court heard the positions of the parties and finally approved the proposed settlement as follows:

(a) The Defendants agreed to pay $782,000.00 in three equal installments by no later than: September 30, 2018, December 30, 2018, and October 23, 2019.

(b) The Defendants agreed to pay by June 23, 2018, a class representative fee of $10,000.00 apiece, and a class administration fee of $30,000.00 to Mountain State Justice for administering the settlement.

(c) The Defendants agreed to pay a penalty of One Thousand Dollars ($1,000.00) per day for each day that they are late in making payment to the class counsel, the class representatives, or to the class itself, with the right of a fifteen (15) day grace period. Should a payment be late and not cured within 15 days of the due date, then the penalty of One Thousand Dollars ($1,000.00) for each such late payment will be retroactive to the original due date of the payment.

(d) The Defendants did not make the initial payments to the class members, class representatives, and class counsel, as required under the Agreement. Therefore, the Defendants agreed to pay a late fee of $208,000.00, which was added to the distributions to the class members ($173,700.00), class representatives ($15,000.00 divided equally), and class counsel ($19,300.00).

(e) The Defendants have entered a Judgment Order for the amounts that they have to pay under this settlement.

(f) After accounting for the late penalties, the class counsel will receive attorney's fees equal to ninety-seven thousand five hundred dollars ($97,500.00), i.e. ten percent (10%) of the overall common fund for the class ($975,000.00), to compensate Mountain State Justice for having filed the lawsuit and fought for the miners to receive payment under the WARN Act.

(g) The class representatives will receive a payment of fifteen thousand dollars each ($15,000.00) for serving as class representatives, gathering critical evidence that was necessary in order to prevail on the motion for class certification, attending meetings and hearings, maintaining records, and advocating for the class throughout this litigation.

(h) Mountain State Justice, Inc., as the class administrator, will receive thirty thousand dollars ($30,000.00) in order to administer the class action settlement---that is, to verify the class members, to manage the claims process, and distribute the checks.

(i) Any unclaimed portion of the settlement proceeds will be distributed to a charitable or public program in McDowell County, West Virginia.

## II. LEGAL STANDARD

Rule 23(e) governs the compromise and settlement of class action matters. When a proposed class settlement is reached, it must be submitted to the court for approval. In addition,

class members must be notified of the proposed settlement, so that members have the opportunity to object to the settlement in a scheduled hearing. "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e).

### III. ANALYSIS

Fed. R. Civ. P. 23(e) requires a court to independently and objectively analyze the evidence and circumstances before it in order to determine whether a proposed class settlement is in the best interest of those whose claims will be extinguished. *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 31 Fed. R. Serv. 3d 845 (3d Cir. 1995); *Air Line Stewards and Stewardesses Ass'n, Local 550, TWU, AFL-CIO v. American Airlines, Inc.*, 763 F.2d 875 (7th Cir. 1985); *cf.* 2 Newberg & Conte on Class Actions § 11.41 at 11-88 to 11-89.

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.) (emphasis added) *cert. denied*, 423 U.S. 864 (1975); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983); *Sala v. National RR Passenger Corp.*, 721 F. Supp. 80 (E.D. Pa. 1989); *see also Piambino v. Bailey*, 610 F.2d 1306, 1327 (5th Cir. 1980) *cert. denied*, 449 U.S. 1011 (1980).

The U.S. Supreme Court has noted with reference to court approval of class action settlements:

> Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. *See Protective Committee for Independent Stockholders of TMT*

3

> *Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157 [(1968)].
> They do not decide the merits of the case or resolve unsettled legal questions.

*Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

A. **Approval of the settlement.** The parties have tendered an agreement that provides Class members with $8,125.00 each, a value reasonably approximating the statutory penalty under the WARN Act, equivalent in value to two months of wages. The Court finds the settlement affords class members with access to substantial value in exchange for the compromise of their claims, and is consequently in the best interest of those whose claims will be extinguished. *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 31 Fed. R. Serv. 3d 845 (3d Cir. 1995); *Air Line Stewards and Stewardesses Ass'n, Local 550, TWU, AFL-CIO v. American Airlines, Inc.*, 763 F.2d 875 (7th Cir. 1985); *cf.* 2 Newberg & Conte on Class Actions § 11.41 at 11-88 to 11-89.

At the hearing on January 16, 2019, Class Counsel tendered an unrefuted proffer that the settlement was the result of arm's length negotiations before the Honorable Omar Aboulhosn, United States Magistrate Judge. The Court has reviewed the record of the Plaintiffs' issuance of two sets of interrogatories and requests for production, (ECF Doc. # 5, 26), the Defendants' productions of evidence in response thereto, and the substantial evidence the Plaintiffs produced through investigation and filed in support of the Motion for Class Certification. (ECF Doc. #15.) After careful consideration, the Court finds that sufficient discovery was undertaken and/or investigation completed to enable counsel and the Court to act intelligently. The Court finds that the proponents of the settlement are adequately experienced in litigating and resolving WARN Act claims based on the four class actions under the WARN Act that class counsel have litigated and settled before this Court in the Southern District of West Virginia. The Court further finds that no potential class members nor others have objected or presented a dispute regarding the settlement.

As to the merits of the case, the Court finds that the Burke Mountain Mine Complex at issue in this case is a contiguous area joined together by permitted haulroads that are used for common operational purposes of moving coal from the point of extraction through the on-site beneficiation or preparation procedures. The Court finds that the Bluestone Coal Corporation, Bluestone Industries, and its affiliated corporate entities constituted a joint or single employer in this matter inasmuch as they acted concertedly to order and carry out the layoff.

As to the period for payment under the settlement, the Court notes some concern with the protracted duration of the time period for payment of the common fund. However, because the parties have agreed that the Defendants will pay a late penalty of $1,000.00 per day for each day that each payment is late to either the class representative, class counsel, or common fund, the Court is satisfied at this time that the settlement agreement includes provisions sufficient to ensure the protection of the interests of the class

For the reasons set forth herein, the Court **FINDS** that the settlement is supported by the apparent strength of the case and that the value and terms of the settlement are fair, reasonable and adequate when weighing the uncertainties involved in litigation and defending a judgment, against the amount and form of the relief offered in the settlement.

**B. <u>Notice of final settlement.</u>** The Plaintiffs have proposed to direct notice in a reasonable manner to all class members. Plaintiffs propose to provide direct written notice by U.S. mail to the known addresses of each class member. The Plaintiffs previously issued an initial Notice of Class Action Settlement by U. S. Mail to ninety-five potential class members, and by publication to interested stakeholders including the United Mine Workers of America District 17, Subdistrict 29 office in Beckley, and WORKFORCE West Virginia Region I. No class members opted out in

response to that notice. The Plaintiffs also placed a notice in the annual Coal Issue of the Welch News publishing the terms of the class notice.

Upon final approval of the settlement by this Court, the Plaintiffs shall issue a second class notice stating the number of verified class members, the minimum per-capita award for each member (which may be subject to enhancement if Defendants accrue additional late penalties in accordance with the Mediation Agreement), the installments on which that award would be paid under the Mediated Settlement Agreement, and the procedures for claiming the award monies.

Plaintiffs and Defendants have ascertained by agreement a list of one hundred and eight (108) class members covered by the settlement and to whom notice shall be directed through best efforts by Class Counsel. (Ex. A) (Class List). Class Counsel represents that they have made substantial efforts throughout the course of this litigation to maintain a current list of mailing addresses and telephone numbers of class members to ensure the efficacy of notice.

These methods of notice satisfy the "best notice practicable under the circumstances" and conform to the due process requirements for class members who are unknown or who do not receive actual notice. *See In re Serzone Products Liability Litigation*, 231 F.R.D. 221 (S.D.W. Va. 2005); *see also Long v. Nationstar Mortgage, LLC*, 2016 WL 1229107 (S.D.W. Va. March 28, 2016). The Court therefore approves the revised Final Notice of Settlement that is attached to the Plaintiff's proposed Order and approves its completion and issuance by Class Counsel. (Ex. B).

**C. Attorneys' fees and costs are reasonable.** When a proposed class settlement would create a "common fund" to be distributed for the benefit of the class members, the presiding court may approve reasonable attorney's fees from the common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (explaining the common fund doctrine); *see* Fed. R. Civ. P. 23(h) (authorizing the award of reasonable attorneys' fees in class actions). Courts have increasingly

favored the percentage method for calculating attorney's fees in common fund cases. *See Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 462 (S.D.W. Va. 2010) (collecting authorities); *cf. Muhammad v. Nat'l City Mortgage, Inc.*, Civil Action No. 2:07-cv-0423, 2008 WL 5377783, at *7 (S.D.W. Va. Dec. 19, 2008) (Copenhaver, J.).

To assess the reasonableness of the attorney's fee for Class Counsel in this case, the Court considered the following factors commonly used by courts in evaluating a fee for class counsel as a percentage of a common fund: (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy. *See generally Kay Co.*, 749 F. Supp. 2d at 464 (*citing Jones v. Dominion Resources Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009); *In re Cendant*, 243 F.3d 722, 733 (3d Cir.2001); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974); s*ee also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting similar factors for consideration under the lodestar method).

The Court **FINDS** that the following factors all weigh in favor of the reasonableness of the requested fee award: the significant benefit obtained for the class; the quality, skill and efficiency of Class Counsel; awards in similar cases; the absence of objections to the award; the high risk of non-payment; and public policy. Balancing all of these factors, the Court **FINDS** that a fee award in the amount of 10% of the final common fund is a reasonable fee for Class Counsel's work in this case – and in fact it is substantially lower than the reasonable fee customarily charged in similar cases.

### *(1)* *Results Obtained for the Class.*

The Court notes that the result of $8,125.00 for each of one hundred and eight (108) class members is a substantial award that approximates the full value of each individual claim. The parties mediated at arms' length with an independent mediator, the Honorable Judge Omar Aboulhosn, United States Magistrate Judge, on April 23, 2018. (ECF 32, 33). The Plaintiffs completed two rounds of formal, written discovery to verify the identities of the parties. (ECF 5) (Certificate of Service for Plaintiffs' Interrogatories and Requests for Production of Documents); (ECF 26) (Certificate of Service for Plaintiffs' Second Interrogatories and Requests for Production of Documents). The terms of the Mediated Settlement Agreement are fair insofar as they provide the class members with nearly two full months of straight-time wages, which approximates the amount to which the class members would be entitled if they succeeded on the merits at trial.

The dollar amount of the award for each eligible class member is calculated based on the following: The parties determined that there were one hundred and eight (108) class members. The common fund was determined to be $782,000.00, and when divided by 108 class members, equals $8,125.00 per person. This per capita amount may be enhanced in the event that the Defendants are late on payments under the settlement. Any further late penalties accruing under the Mediation Agreement will be apportioned to the recipients of the late payments.

Should the case have proceeded to trial, the class might have recovered not only their straight-time wages for two months, but also could possibly have recovered a representative amount of overtime wages and damages to cover the amount of benefits that the class members were denied as the result of the unnoticed termination of benefits that occurred in this case. (ECF Doc. # 37 at 4.) The Court **FINDS** that Class Counsel have obtained a settlement that provides a significant and valuable benefit for the class that weighs in favor of the proposed fee.

### *(2) Quality, Skill, and Efficiency of the Attorneys Involved.*

The Court notes that Class Counsel have successfully settled two prior WARN Act cases against Bluestone Industries or its affiliated entities, and thus had developed a body of knowledge about not only the law, but about the people and facts involved in the instant case, which enabled counsel to defeat the Motion to Dismiss, to argue successfully for class certification, and to secure a prompt and favorable settlement representing robust value for the class members. The settlement was secured during the very month following the issuance of the class certification order in this case. (ECF Doc. # 25, 32.) Accordingly, the Court **FINDS** that Class Counsel have demonstrated quality, skill, and efficiency in their prosecution of this matter that weighs in favor of the proposed fee.

### *(3) Complexity and Duration of the Litigation.*

Due to the ample investigation that Class Counsel had conducted, this litigation was not lengthy. The Court notes that Class Counsel's familiarity with the WARN Act and class action litigation generally, enabled them to adroitly navigate the complex facts and legal issues entailed in demonstrating the statutory elements of WARN Act liability and briefing the issues on the Motion to Dismiss. Accordingly, the Court **FINDS** that the complexity and duration of the litigation are neutral in this case and do not weigh for or against the proposed fee.

### *(4) Risk of Non-Payment without Litigation.*

Courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis. *See In re Cardinal Health*, 528 F. Supp. 2d at 766. The risk undertaken by class counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case

was settled. *See In re Merrill Lynch*, 249 F.R.D. at 139–40; *In re Cardinal Health*, 528 F. Supp. 2d at 766 (finding that class counsel faced "less risk than in other securities cases because it piggybacked on the success of a prior SEC investigation" and because the defendant had conceded some liability); *id.* (finding that class counsel faced lower risk because public events precipitated the litigation); *Strang*, 890 F. Supp. at 503 (finding that risks to plaintiffs' counsel were minimized by early settlement and reducing the percentage award from 30% to 25% of the Settlement Fund accordingly); *see also Loudermilk Servs., Inc. v. Marathon Petroleum Co.*, LLC, 623 F. Supp. 2d 713, 721–23 (S.D.W. Va. May 7, 2009) (Chambers, J.) (discussing how the parties' own evaluation of the risks and values of the case and both parties' high incentives towards settlement tend to limit the risk of litigation).

Here, the Court **FINDS** that there was pronounced risk for Class Counsel and class members, weighing in favor of the proposed fee, given the lapse of time since the event giving rise to the liability, the complete lack of enforcement of the WARN Act notice period by the U.S. Department of Labor, the brief one-month period between class certification and settlement and the inherent risks in collecting large judgments.

*(5)    Awards in Similar Cases.*

"Attorney fees awarded under the percentage method are often between 25% and 30% of the fund." MANUAL FOR COMPLEX LITIGATION (4TH) § 14.121 at 188. The Court is not bound by such customary or "benchmark" fees. *See Third Circuit Task Force Report*, 208 F.R.D. at 355 ("In setting a percentage fee, the court should avoid rigid adherence to a 'benchmark.'"). "[A] district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant*, 243 F.3d at 736. A study in the Journal of Empirical Studies demonstrated a strong inverse relationship between class

recovery size and attorney's fees. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements*: 1993–2008, 7 J. Emp. L. Studies 248 (June 2010). Eisenberg and Miller ascertained that the mean attorney's fee percentage award from 1993–2008 in employment-related class action cases was twenty-seven percent (27%) and in ERISA-related class action cases was twenty-three percent (23%). *Id*. at 261; *cf*. Table 5. The Court **FINDS** that the awards in similar cases are customarily more generous than the ten percent (10%) sought by the Class Counsel here, and thus this factor weighs in favor of the reasonableness of the fee.

*(6) Objections.*

As noted above, no potential class member has objected or presented a dispute regarding the settlement. The Court accordingly **FINDS** that the absence of objections weighs in favor of the proposed fee.

*(7) Public policy.*

The statement of legislative purpose contained in the chapeau to the WARN Act sets forth the public policy underpinning the statute: "[t]o require advance notification of plant closings and mass layoffs, and for other purposes." 102 Stat. 890, Pub. L. 100-379. The Court **FINDS** that the public policy contained within the WARN Act supports the award of the proposed percentage fee to ensure that counsel is compensated for their efforts that extended beyond the hours immediately expended on this lawsuit.

D. **Fees for the Class Representatives and Class Counsel are reasonable.**

Class representative fees are routinely approved in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Muhammad*, 2008 WL 5377783, at *9. By way of

11

further explanation, in *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 400 (D.D.C.2002), the court approved $25,000 to each of three class representatives. Here, the Court observes that the class representatives expressed commendable courage by placing their names on a major lawsuit against a powerful group of Defendants, and participated throughout the litigation by providing documents and attending hearings. Furthermore, the Motion to Certify the Class was supported by exhibits provided by the class representatives Frank Treadway (ECF 15-1, 15-2) (notices regarding layoff) and Joey Clark Hatfield (ECF 15-10) (detailed daily notes documenting the work activities of employees throughout the Burke Mountain area that the Court determined to constitute a single site of employment). Accordingly, the Court **FINDS** that the fees of $10,000.00 per class representative, as supplemented with late penalties due to the class representatives, are reasonable and thus approved. Similarly, the Court **FINDS** that the fee of $30,000.00 for the substantial work of managing the notice and distribution of settlements to a class of 108 miners is reasonable, is agreeable to the Defendants, and is thus approved.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court **ORDERS** that the Final Settlement be **APPROVED**, the Notice of Class Action Settlement be **APPROVED** for distribution, and this matter be **TERMINATED** for administration of the settlement.

The Court further **ORDERS** that this matter be **DISMISSED** from the Court's docket and that all motions pending at the time of this Order be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk of this Court to send a copy of this Order to any unrepresented party and to all counsel of record.

ENTERED: March 4, 2019

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

Prepared by:

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
223 Prince Street, Beckley, WV 25801
Phone: (681) 207-7510
Fax: (681) 207-7513
Email: sam@msjlaw.org
bren@msjlaw.org

13