**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**FRANK TREADWAY, et al.,
Plaintiffs,**

                    **Civil Action No. 5:16-cv-12149
                    Honorable Irene C. Berger**

**v.**

**BLUESTONE COAL CORP., et al.,
Defendants.**

## REPLY TO DEFENDANTS' OBJECTIONS
## TO PROPOSED JUDGMENT ORDER

The Plaintiffs file this Reply in Opposition to the Defendants' Objections to the Proposed Judgment Order.

**I.**      **RELEVANT PROCEDURAL BACKGROUND**

On April 23, 2018, the Parties entered a Mediated Settlement Agreement setting forth 18 month period within which the Defendants would provide a series of payments to the class representative, class administrator, and to the class members via a common fund. (ECF Doc. # 40-1). On March 5, 2019, this Court entered an Order (ECF No. 42) approving the final settlement in this case. The Defendants have accepted judgment pursuant to the terms of the Mediated Settlement Agreement, which were incorporated in the March 5 Order of this Court. Pursuant to that Order, the Defendants agreed to the following obligations:

    a. The Defendants agreed to pay $782,000.00 in three equal installments by no later than: September 30, 2018, December 30, 2018, and October 23, 2019.
    b. The Defendants agreed to pay by June 23, 2018 a class representative fee of $10,000.00 apiece, and a class administration fee of $30,000.00 to Mountain State Justice for administering the settlement.
    c. The Defendants agreed to pay One Thousand Dollars ($1,000.00) per day for each day that they are late in making payment to the class counsel, the class representatives, or to the class itself, with the right of a fifteen (15) day grace period. Should a payment be late and not cured within 15 days of the due date,

1

then the One Thousand Dollars ($1,000.00) for each such late payment will be retroactive to the original due date of the payment.

The Defendants failed to make several payments by the timeline set in the Mediated Settlement Agreement. First, the Defendants failed to make the payment of $30,000.00 due on June 23, 2018 to the class administrator. Second, the Defendants failed to make the payments of $10,000.00 apiece that were due on June 23, 2018 to the three class representatives. Third, the Defendants failed to make the payment of $260,666.66 (one-third of $782,000.00) that was due to the common fund on September 30, 2018. Fourth, the Defendants failed to make the payment of $260,666.66 (the second third of $782,000.00) that was due to the common fund on December 30, 2018. On January 16, 2019, this Court held a hearing in this matter. By that date, 207 days had elapsed since the first two payments were due to the class administrator and class representatives; 108 days had elapsed since the first payment was due to the common fund; and 17 days had elapsed since the second payment was due to the common fund.

In order to ensure that the Defendants came current on the obligations to the class, the Parties entered a supplemental agreement that provided for payment of the amounts due to the class and for partial forgiveness for the daily late fees---by allowing the Defendant to pay $1,000.00 per day running since June 23, 2018, instead of paying separate late fees for the two payments due on June 23, and the two payments due on September 30, 2018 and December 30, 2018. The compromised total to make up the arrearage was $779,333.35, to be paid on the following schedule:

   d. $155,866.67 total of three payments due on January 18 to: 1) common fund, 2) class representatives, and 3) class counsel,
   e. $155,866.67 total of three payments due on February 1 to: 1) common fund, 2) class representatives, and 3) class counsel,
   f. $155,866.67 total of three payments due on February 15 to: 1) common fund, 2) class representatives, and 3) class counsel,

   g. $155,866.67 total of three payments due on March 1 to: 1) common fund, 2) class representatives, and 3) class counsel,

   h. $155,866.67 total of three payments due on March 15 to: 1) common fund, 2) class representatives, and 3) class counsel.

Furthermore, the Parties also agreed that Defendants would make additional payments of $260,666.67 by June 23, 2018 to pay off the rest of the common fund, and an additional payment of $10,000 to the class representatives by June 23, 2019. The entire valuable of the Court-approved settlement in the March 5 Order (before any late fees) was $877,500.00 and each miner was entitled to a class payment from the common fund equaling $8,125.00 apiece. The Parties further agreed, and the Court ordered on March 5, that the same $1,000 daily late fees would apply as had been originally negotiated in the Mediated Settlement Agreement, in order to incentivize timely performance with the new timeframes that the Parties had entered before this Court on January 16, 2018 and had pledged to honor.

Relying on the new timetable, Mountain State Justice, Inc., acting in its capacity as class counsel and class administrator, sent out a Court-approved notice informing the class members that they were entitled to pick up their payments under the settlement in two installments: an initial check for $5,952.77 on or after March 29, 2019, and a second check for $2,172.23 on or after July 8, 2019.

After agreeing to the new timetable, the Defendants made one timely payment and several untimely payments of the revised "principal" amounts due, and those payments were made on the following dates:

 January 18, 2019 - $155,866.67 – timely payment of three payments that were due 1/18

 February 6, 2019 - $155,866.67 – consisting of three payments that were due on 2/1/19, and were thus made five days late. Defendants failed to pay the total liquidated damages $15,000.00 for the five days late.

March 28, 2019 - $331,166.26 – consisting of six payments due on 2/15/19 and 3/1/19. Defendants failed to pay liquidated damages for the three payments that were 41 days late after being due on 2/15/19, or for the three that were 27 days late after being due on 3/1/19. The total liquidated damages: $123,000 for the payment that was due 2/15/19 (41 days late), plus $81,000 for the payment that was due on 3/1/19 (27 days late).

Those aforementioned three payments, which the Defendants did make, totaled $642,899.60. (The Defendants failed to pay the $219,000.00 in late fees that had accrued as of March 28, 2019.) The sum of $642,899.60 is sufficient to cover 108 checks in the amount of $5,952.77 cents (the amount of the initial check that the class members were notified that they would receive on or after March 29, 2019), with a remainder of $0.44. The Defendants claim that they could not happen to afford a dollar more than that amount (an assertion that is frankly belied by their ability to make regular payments up until this point, and as further set forth in greater detail below).

In order to honor the distribution schedule that was provided in the Class Notice, the class counsel and class administrator are currently distributing the settlement checks in the amounts of $5,952.77 to the class members. However, because the undersigned did not hold back the Court-ordered class administration fee, class representative fees, or attorney fees (10% of the common fund), the undersigned has actually received only $0.44 (forty-four cents) to cover all of the administrative staff time and attorney time that were necessary for administering the settlement and, not incidentally, that were necessary to successfully litigate this case and to negotiate the settlement. In fact, in order to cover the out-of-pocket costs of class administration, the undersigned has had to advance cash even to cover the paper for the checks.

After March 28, 2019, under the revised payment schedule, the Defendants still owed $136,433.35 in "principal" that was due by March 15, 2019; as well as $219,000.00 for the satisfied payments that were paid late and were originally due on 2/1, 2/15, 3/1; and Defendant

4

also continue to accrue mounting late fees in the amount of $3,000.00 per day running from March 28, 2019 to the present time and until such time as the entire sums due under the March 5 Order are paid off. Plaintiffs contend that, even if Defendants pay off the $136,433.35 that was due by March 15, the Defendants should nonetheless continue to owe $3,000.00 per day until they pay off the late fees that were due to the class administrator, class representatives, and the common fund. They have since failed to make the three remaining payments by the deadlines set forth in the supplemental agreement of the Parties.

The Defendants currently owe the following amounts:

a. $136,433.35 – total of three payments due March 15 to: 1) common fund, 2) class representatives, and 3) class counsel,
b. $15,000 – late fees for the three payments that were due on February 1 and paid on February 6. ($3,000/day x 5)
c. $123,000 – late fees for the three payments that were due on February 15 and not yet paid. ($3,000/day x 41 as of 3/28)
d. $81,000 – late fees for the three payments that were due on March 1 and not yet paid. ($3,000/day x 27 as of 3/28)
e. $57,000 – late fees for the three payments that were due on March 15 and not yet paid. ($3,000/day x  as of 4/3/2019)

In total, as of April 3, 2019, the total unpaid and due immediately is: $412,433.35, with $3,000.00 accruing daily until all arrearages are paid off, including unpaid late fees that are "payments due" immediately under the Mediated Settlement Agreement. Furthermore, Defendants will still owe the additional $270,666.67 by June 23, 2019 pursuant to the March 5 Order.

## II. ANALYSIS

The Defendants essentially make two arguments that merit discussion. First, they argue that the agreement did not provide for "post-judgment penalties." Second, they argue that it would be "unduly burdensome" and a "windfall" for the Court to enforce the liquidated damages provision of the Mediated Settlement Agreement in the same fashion as the Defendants

5

voluntarily agreed to comply with that provision previously, and as requested by the Plaintiffs in the Motion to Enforce (ECF Doc. # 43), the Notice for Entry of Judgment (ECF Doc. # 44), and the Proposed Judgment Order (ECF Doc. # 47).

> ### A. *The Agreement and Order provide for liquidated damages in the form of late fees for payments that are late---regardless of whether those late payments accrue before or after the entry of judgment*

As to the argument that the Mediated Settlement Agreement ("Agreement") and/or the March 5 Order ("Order") did not provide for "post-judgment penalties," this argument is a red herring. The Agreement and Order provided for liquidated damages in the form of late fees in the amount of $1,000.00 per day "for each day that a payment due hereunder is late" --- without regard to whether the Court had entered judgment yet or not. Indeed, the Defendants agreed to the entry of judgment against them at the time of the signing of the agreement and so it is illogical to assert that, had the Court entered judgment immediately, that would somehow have cut off the Defendants' obligations regarding late payments under the Agreement.

> ### B. *Defendants' regrets about their contract, and their concerns that it is "unduly burdensome" or a "windfall," are immaterial to the enforceability of the Agreement and Order---and furthermore, Defendants have waived any legal contractual defense to the enforcement of the Agreement by failing to raise it in their brief.*

As to the argument that the terms of the Agreement and the March 5 Order are "unduly burdensome" or a "windfall," the Defendants have failed to articulate any legal argument that their own agreement should be set aside or that the liquidated damages provision to which they agreed is unenforceable. The Defendants did not make the legal argument that the late fees constituted a liquidated damages provision that was "grossly disproportionate" to the actual damages or that it violated any of the other tenets of West Virginia contract law. Instead, Defendants have merely complained that the amounts that they owe are "excessive" in the abstract. However, to the extent that the Court may consider the legal factors for evaluating a

6

liquidated damages provision before entering the Judgment Order, the case law set forth herein clearly indicates that the Settlement Agreement is legally sound under applicable principles of West Virginia contract law and the germane Fourth Circuit precedent.

In *Choice Hotels Int'l, Inc. v. Chewl's Hosp., Inc.*, 91 F. App'x 810 (4th Cir. 2003), an arbitrator issued an award in favor of Choice Hotels for $196,992 in liquidated damages; $32,042.60 in damages for trademark infringement; $10,245 in attorneys' fees; and $1,379.52 in costs. *See Choice Hotels* 91 F. App'x at 813. The amount of the liquidated damages was *over six times the sum of actual damages* incurred for the trademark infringement in that case. *Id*. The opposing party, Chewl's Hospitality, moved to set aside the award based, in pertinent part, on the arguments that the contractual liquidated damages clause in the underlying contract was unenforceable because it was "grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from [a] breach of the contract," and argued that Choice Hotels should not be permitted to recover both liquidated damages and damages for trademark infringement. *Id*. at 812, 817. Applying Maryland common law contract principles, the Fourth Circuit found that the liquidated damages provision was fully enforceable and not "grossly disproportionate" to the actual damages. The Court reached that holding because "[p]recise damages could not be determined at the time of contracting, there being no measure [for the prospective breach or default under the agreement]." *Id*. at 817. The Court went on: "Moreover, the liquidated damages clause provided a reasonable method for calculating just compensation, taking into account the profits earned in the months prior to termination and the amount of time remaining [for the relevant contractual performance]." *Id*.

In this case, all the relevant transactions occurred in West Virginia. There was no choice of law provision in the Agreement. Thus, West Virginia contract law applies.

Under West Virginia law, "[p]arties may properly contract for liquidated damages (1) where such damages are uncertain and not readily capable of ascertainment in amount by any known or safe rule, whether such uncertainty lies in the nature of the subject, or in the particular circumstances of the case; or (2) where from the nature of the case and tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties." *Wheeling Clinic v. Van Pelt*, 192 W. Va. 620, 625, 453 S.E.2d 603, 608 (1994) (*citing Stonebraker v. Zinn*, 169 W. Va. 259, 286 S.E.2d 911 (1982)). A liquidated damages provision may not be enforced if the measure of liquidated damages is "grossly disproportionate" to actual damages. *Gateway Towne Ctr., LLC v. First United Bank & Trust*, 2011 WL 3877010, at *6 (N.D. W.Va. Sept. 2, 2011) (*citing West Virginia Pub. Employees Ins. Bd. v. Blue Cross Hospital Serv. Inc.*, 328 S.E.2d 356, 359 (1985)). Here, Plaintiffs have shown that the liquidated damages provision was "the subject of actual fair estimate and adjustment between the parties" because it was negotiated through an arm's length mediated settlement transaction. The Parties were fully apprised of the nature of the liquidated damages term when they entered it. Accordingly, the Parties "properly contracted for a liquidated damages provision" under the *Wheeling Clinic*. Further, the standard for abrogating liquidated damages---gross disproportionality---is similar under both Maryland and West Virginia law. And so the *Choice Hotels* analysis is instructive---if not controlling---on how the Fourth Circuit would likely review West Virginia law on liquidated damages as applied in this case.

The liquidated damages are not "grossly disproportionate" to actual damages. Unlike in *Choice Hotels*, the outstanding late fees are not currently even equal to the amount of the underlying obligation of $842,000.00, or the initial agree-upon modified obligation of $1,050,000.00. That is, not only are the liquidated damages not in excess of six times the

8

principal amount (as was upheld in *Choice Hotels*), they are actually less than the principal amount.

In this case, the 108 class members received notice of the settlement terms and forewent any objections to that settlement, based at least in part on the notice that they would be paid on a specific schedule set forth in the class notices---a schedule that has now been breached by Defendants. The losses incurred by the 108 class members in reliance on those promised payment dates were hard for the Parties to ascertain at the time of contracting. Therefore, the Parties reasonably resorted to negotiating a liquidated damages provision. The Court has found that the Defendants constitute a single employer, i.e. Mechel Bluestone and/or Bluestone Industries are parents of subsidiaries that generate cashflow to those parents. (ECF Doc. # 25 7-8)). The Court has further found that the single employer's Burke Mountain Mine Complex constitutes a single site of employment. (*Id*. at 8-9). Enforcement of the judgment against the single employer based on the revenues and assets associated with the entire Burke Mountain Mine Complex are thus appropriate and constituent with the record that has been established in this case.

The Defendants have made payments in the amount of $642,899.60 over a two-month period. Accordingly, the Defendants themselves and/or the single-employer corporate entity of which the Defendants are a part has access to cashflow from their active operations, and/or access to liquidity (via underutilized plant and equipment), sufficient to generate the funds necessary to pay the remainder of the judgment on the schedule by which it is due: $3xx,xxx immediately and $270,666.67 by June 23, 2019. In West Virginia, there is not a strict bar on the enforcement of punitive contract terms, but a penalty clause will not be enforced unless justice clearly demands it. *W. Virginia Pub. Employees Ins. Bd. v. Blue Cross Hosp. Serv. Inc.*, 174 W.

9

Va. 605, 608, 328 S.E.2d 356, 359 (1985) (*citing Hill v. Vencill*, 90 W.Va. 136, 144, 111 S.E. 478, 481 (1922)). Even if the Court were to view the liquidated damages provision as so grossly disproportionate to the actual damages, the Plaintiffs here urge that justice clearly demands the imposition of the $1,000/day for each late payment for the following reasons: the miners have gone for over seven years since the mass layoff in 2011-2012 without receiving the paid notice set forth under the WARN Act; when settling the case in 2018, the Plaintiffs agreed to provide the Defendants with 18 months to fully perform their obligations under the Mediated Settlement Agreement; the Plaintiffs agreed to even further liberalize the period for performance and to reduce the liquidated damages owed under the Agreement on one prior occasion, and that agreement was entered by the Parties before this Court at the hearing on January 16, 2019 and memorialized in the Court's Order of March 5, 2019; the Defendants have demonstrated an ability to pay the required amounts on an ongoing basis by making three periodic payments over a two-month period in 2019 equaling $642,899.60; and the Defendants have acknowledged by their conduct and testimony that they, and the single-employer entity with which they are associated, do continue to have active operations on Burke Mountain and access to sufficient liquidity to pay the outstanding balances.

### *It is proper for the Plaintiffs and class to recover both actual and liquidated damages*

As to the Defendants' claim that it is improper to award both actual and liquidated damages, the Fourth Circuit summed it up in Choice Hotels: "This argument is meritless. As the district court noted, the franchise agreement called for liquidated damages to remedy a termination occasioned by Chewl's default." *Choice Hotels* at 10. The Mediated Settlement Agreement called for the liquidated damages provision and did not include any intervening term for any accord and satisfaction that would absolve Defendants from further liquidated damages

while any amounts due under the agreement (including liquidated damages due) remained unpaid.

Moreover, because the sums of $3,000.00 per day have been insufficient to catalyze compliance with this obligation under the Court's order, the imposition of those sums---or alternately, a more stringent measure---appears necessary in order to incent the Defendants to timely adhere to the Order of this Court.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter the judgment as proposed by Plaintiffs and originally agreed by Defendants, that the Court order the Defendants to comply with the settlement terms set forth above by making the outstanding payment as soon as possible, and that the Court assess such further sanctions or penalties as it may deem necessary and just.

**Plaintiffs,
Frank Treadway, Joey Clark Hatfield,
and Charles W. Hensley,
By counsel,**

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
223 Prince Street
Beckley, WV 25801
(681) 207-7510 (phone)
(681) 207-7513 (fax)
sam@msjlaw.org
bren@msjlaw.org